# EXHIBIT 1

FILED
DONNA McQUALITY
CLERK, SUPERIOR COURT
06/23/2020  4:19PM
BY: ESIEH
DEPUTY

Case No.: P1300CV202000532
HON. DAVID MACKEY

1   Mark W. Drutz, #006772

2   Sharon M. Flack, #021590
   Jeffrey D. Gautreaux, #028104

3   **MUSGROVE DRUTZ KACK & FLACK, PC**
   1135 W. Iron Springs Road

4   P.O. Box 2720
   Prescott, Arizona  86302-2720

5   Phone:      (928) 445-5935

6   Fax:        (928) 445-5980
   Firm Email: admin@mdkflaw.com

7   Attorneys for Plaintiff Alan J. Malnar

8

9       **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

           **IN AND FOR THE COUNTY OF YAVAPAI**

10

11   Alan J. Malnar, an unmarried man,        Case No.

12                 Plaintiff,     **COMPLAINT AND DEMAND FOR JURY TRIAL**

13    v.

14                        (Civil Non-Motor Vehicle)
   Embry-Riddle Aeronautical University,

15   Inc., a foreign corporation; M. Kathleen
   Burkhart Lustyk and John Doe Lustyk, a

16   married couple; Matthew Haslam and Jane
   Doe Haslam, a married couple; ABC

17   Corporations I-X; XYZ Partnerships I-X;
   John Does I-X; Jane Does I-X,

18

19                 Defendants.

20

21

22       Alan J. Malnar, Ph.D. ("**Dr. Malnar**" or "**Plaintiff**") brings this cause of action,

23   including Estoppel, Breach of Implied Covenant of Good Faith and Fair Dealing,

24   Negligence, Intentional Infliction of Emotional Distress, Negligent Infliction of

25   Emotional Distress, Wrongful Discharge in violation of public policy – Common Law,

26   Violation of A.R.S. § 41-1463(B) / 29 U.S.C. § 626 (Age) / Title VII of the Civil Rights

27   Act (sex/gender) -- Discrimination/Hostile Work Environment, Injunctive Relief,

28   subsequent to the filing of a Charge of Discrimination based on his sex/gender and age

with the Arizona Civil Rights Division / Equal Employment Opportunity Commission (EEOC).  Plaintiff has filed this action following issuance of a Notice of Right to Sue from the EEOC / Arizona Civil Rights Division.

## PARTIES, JURISDICTION AND VENUE

1.      Plaintiff Alan J. Malnar (**"Plaintiff"** or **"Dr. Malnar"**), age 64 (d/o/b: 08/17/1955), is an Arizona resident who resides in Yavapai County, in the City of Prescott, Arizona.

2.      At all times pertinent to this Complaint, Defendant Embry-Riddle Aeronautical University, Inc. (**"ERAU"**) was a foreign corporation doing business in Yavapai County as an Education Institution.

3.      At all times pertinent to this Complaint, Defendant M. Kathleen Burkhart Lustyk (**"Lustyk"**) was a resident of Yavapai County, Arizona, and the Dean of the Colleges of Arts and Sciences (**"CAS"**) of ERAU.  If married, Lustyk was acting in furtherance and/or for the benefit of Lustyk's marital community at all times relevant hereto.

4.      At all times pertinent to this Complaint Defendant Matthew Haslam (**"Haslam"**) was a resident of Yavapai County, Arizona, and a Professor employed by ERAU's Department of Humanities and Communications (**"HU/COM"**), a department of CAS led by Lustyk.  At certain times relevant to this Complaint, Haslam was the Chair of HU/COM.   If married, Haslam was acting in furtherance and/or for the benefit of Haslam's marital community at all times relevant hereto.

5.      Defendants John Doe Lustyk; Jane Doe Haslam; ABC Corporations I-X; XYZ Partnerships I-X; John Does I-X; Jane Does I-X are persons, partnerships, or entities whose identities are currently unknown and represent persons who may have enticed or conspired with Defendants to undertake the acts and/or omissions which are the subject matter of this action. Plaintiffs will seek to amend the complaint when their identities are discovered.

6.     At all times pertinent to this Complaint, ERAU was the employer of Defendants Lustyk and Haslam.

7.     At all times pertinent to this Complaint, Defendants Lustyk and Haslam were acting within the course and scope of their employment and/or agency with ERAU and, as a result, ERAU is liable for the acts and/or omissions of Lustyk and of Haslam under the principle of *respondeat superior*.

8.     In the alternative, ERAU is liable for Lustyk's and Haslam's acts and/or omissions under the principle of master and servant or agency law.

9.     At all times relevant hereto, all Defendants were agents of the others in all actions and matters set forth; each was acting as the agent of the other and was acting in the scope of and under cover of their agency with their respective principal, and every act of each defendant was ratified by the others.

10.    This action arises from events that occurred in Yavapai County, Arizona.

11.    The amount in controversy herein exceeds this Court's minimal jurisdictional amount, and this Court has jurisdiction pursuant to A.R.S. § 12-123.

12.    Venue is proper in this Court pursuant to A.R.S. § 12-401(5), (6), and (11).

13.    This Court has jurisdiction pursuant to A.R.S. §§ 12-122 and/or 12-123.

14.    This Court has jurisdiction to hear and determine this action and to grant the relief requested pursuant to Article 6, § 14(1) of the Arizona Constitution.

## GENERAL ALLEGATIONS

15.    Plaintiff hereby repeats and realleges the allegations set forth in the preceding paragraphs, as though fully set forth herein and incorporates the same herein by this reference.

16.    ERAU touts itself as the world's oldest, largest, and most prestigious university specializing in aviation and aerospace, recognized as a premier educational institution and a global leader in teaching the science, practice and business of aviation, aerospace and engineering.

3

17.     From on or about August 1, 1998, until on or about May 15, 2019, Dr. Malnar was an employee of ERAU.

18.     Plaintiff and ERAU had entered into contracts and/or letters of appointment since Plaintiff's initial-hire date on or near August 1, 1998, when Plaintiff joined ERAU as an adjunct faculty member to support academics in what is now known as the Department of Humanities and Communication within CAS.  On or about April 20, 2018, Plaintiff and ERAU via the Chancellor, entered into a faculty contract for the 2018-2019 academic year ("**Contract**").

19.     The Contract provides that it is "subject to existing University policies as specified in the *Faculty Handbook*."   The ERAU Faculty Handbook ("**Faculty Handbook**") provides, inter alia, that:

> Embry-Riddle Aeronautical University is committed to maintaining a humane atmosphere in which individuals do not abuse their personal authority or power in interpersonal relationships.   More specifically, faculty, staff and students will not condone actions or words which a reasonable person would regard as either discrimination or harassment. A complete statement of University policy on these issues is maintained in the Human Resources Department for the guidance of all University employees and is incorporated by reference into this handbook.

Faculty Handbook, Part I, Section 6.3.

20.     Upon information and belief ERAU's Harassment and Non-Discrimination Policy ("**HAND Policy**") provides, *inter alia*, that ERAU complies with all federal and state equal employment opportunity laws and strives to keep the workplace free from all forms of harassment, including but not limited to, harassment based on gender, sexual orientation, gender identity, religion, national origin, age, disability, race, color, creed, veteran status and other status protected by federal, state or local law.

21.     In 1998, Plaintiff held a Master of Arts in English.  At that time, ERAU hired Plaintiff as an Adjunct Professor to teach courses in general education. Based on performance, Plaintiff then advanced through the ranks of promotion available to all eligible, full-time, tenure and non-tenure track faculty.

22.   In 2000, Plaintiff was promoted to Lecturer.

23.   In 2001, Plaintiff was promoted to Assistant Professor.

24.   While employed at ERAU, in 2006 Plaintiff earned a Doctor of Philosophy in Literature and Criticism.

25.   In 2008, Plaintiff was promoted to Associate Professor.

26.   In or near fall of 2017, ERAU formally opened its STEM Education Center, focusing on STEM-based education.

27.   In or near fall of 2017, ERAU hired Lustyk as Dean of CAS.

28.   On or about April 3, 2018, ERAU promoted Plaintiff to the rank of full Professor on non-tenure track based on his "excellent record of teaching, scholarly activity, and service to Embry-Riddle Aeronautical University."

29.   The Faculty Handbook, Part I, Section 9, states that promotion to Professor is "limited to those Associate Professors who have demonstrated extensive and consistent excellence in all areas," i.e., (i) Teaching; (ii) Scholarly and Professional Activity; and (iii) Service.   The foregoing categories also form the basis for Annual Performance Evaluations of faculty ("APE").

30.   Outwardly, Lustyk supported Dr. Malnar's promotion from Associate Professor to Full Professor with a written letter of approval that was incorporated into Dr. Malnar's promotion application package.

31.   At Lustyk's suggestion, Dr. Malnar had included within his promotion application to full Professor, a declaration of intent to work with the junior faculty to develop general education in support of the university's new STEM curriculum.

32.   In 2017, while Dr. Malnar was compiling the necessary documentation in support of his application for full Professor status, Dr. Malnar discovered that Haslam had engaged in unprofessional conduct.   Haslam copied the content from Dr. Malnar's 2015 APE[1] conducted by Angela Beck, and pasted it into Dr. Malnar's 2016 APE, which

---

[1] The 2015 APE was administered by Angela Beck ("**Beck**"), former HU/COM Chair.

1  Haslam was conducting.  Dr. Malnar informed Dean Lustyk of the plagiarism.  Dean

2  Lustyk failed and/or refused to take any action to rectify Haslam's wrongful conduct that

3  was directed at and/or that may have had a detrimental impact on Dr. Malnar.

4        33.   Plagiarism is a breach of ERAU policy, including plagiarism in the context

5  of discharge of one's academic and/or administrative duties.

6        34.   At or near the same time in which Dr. Malnar was promoted to full

7  Professor in April of 2018, he filed a formal grievance with the Faculty Senate against

8  Haslam, who served as the Chairperson of HU/COM. As the Chair of HU/COM, Haslam

9  abused his authority and power in violation of the Faculty Handbook as well as ERAU's

10  Administrative Policy and Procedure Manual ("**APPM**"). In his formal grievance,

11  Dr. Malnar expressly stated in accordance with University written policy that "any

12  retaliatory action taken by any member of the University community . . . as a result of

13  [Dr. Malnar's] complaint [would be] strictly prohibited."

14        35.   ERAU's APPM prohibits retaliatory action and abuse of power.

15        36.   Abuse of Power is defined as any situation in which one person covertly or

16  overtly uses the power inherent in a position of authority to threaten, coerce or intimidate

17  another person.

18        37.   At or near the same time that Dr. Malnar was promoted to full Professor in

19  April of 2018, Haslam was denied tenure. The Faculty Senate Tenure Committee

20  recommended that Haslam not be granted tenure; however, Haslam was promoted to

21  Associate Professor without tenure.

22        38.   General components of Haslam's application package for tenure were

23  considered at a meeting in which the Tenure Committee Chair discussed with faculty

24  members the reason for the Committee's recommendation to deny Haslam tenure, along

25  with the decision to give Haslam a two-year extension to prepare his tenure application

26  package for resubmission.  In attendance at this meeting were Chancellor Frank Ayers

27  ("**Ayers**"), Lustyk, Beck, and Dr. Malnar.

28

39.    In and around this time, during the spring of 2018, Dr. Malnar received condescending communication from Haslam. One such email states: "I find your comments about being excluded [from department matters] to be comical"; "Last semester you came into my office all fired up about working together... I thought you were just bullshitting me... because you wanted me to recommend you for promotion"; "I am lost to understand what you are upset about"; "In the five+ years I have been here, we have not had 5 decent conversations, and now I am supposed to be excited to have you contribute to the [HU/COM] department." Another email from Haslam criticizes Dr. Malnar's book-publication: "[Y]ou are pissed that I didn't divine all the work you did." In another email Haslam threatened to add Dr. Malnar on the agenda for an upcoming department meeting as "item #1" with "20 minutes" to discuss Dr. Malnar's alleged attempts to have Haslam removed as HU/COM Chair. Haslam followed with other abusive emails extending into 2019 and disregarded emails from Dr. Malnar pertaining to HU/COM business.

40.    In and around this time of the spring of 2018, Haslam improperly deemed Dr. Malnar's 2017 APE scholarship criteria "not applicable" because Dr. Malnar was "non-tenure track," despite that full time "[f]aculty employed in a non-tenure track status are assured the same academic freedoms as any other faculty member" (Faculty Handbook, Part I, Section 16); despite that full-time faculty members are entitled to full freedom to research (Faculty Handbook, Part I; Section 6); and despite that full-time faculty classified as non-tenure track are "entitled to all of the benefits" stated in the Faculty Handbook (Faculty Handbook, Part I, Section 3). A "non-applicable" rating was inherently inconsistent with Dr. Malnar's then-recent publication of a nationally recognized book (Voices of the Headland:  Robinson Jeffers and the Bird of Prey, New York, Peter Lang) that had been funded by ERAU, which Dr. Malnar continued to work on into 2018, until its publication in May of 2018.

41.    Additionally, during this time in or around the spring of 2018, with regard to the 2017 APE, Haslam subjected Dr. Malnar to differential and/or disparate treatment

by arbitrarily evaluating Dr. Malnar's teaching performance against a syllabi-template that was not yet approved or officially sanctioned at that time. Haslam singled out Dr. Malnar for disparate treatment by applying an arbitrary set of criteria, ultimately concluding that Plaintiff's teaching rating was "Needs Improvement," after several years of above-average ratings.

42.   In good faith, Dr. Malnar made changes to his course syllabi to placate Haslam. Dr. Malnar transmitted via electronic mail a draft of the new syllabi to Haslam and Lustyk on or near March 22, 2018.

43.   Haslam did not respond to Dr. Malnar's proposed syllabi rewrite sent on or near March 22, 2018.

44.   Lustyk did not respond to Dr. Malnar's proposed syllabi rewrite sent on or near March 22, 2018.

45.   Dr. Malnar did not support Haslam's application for tenure, based on Haslam's lack of experience and other qualities that Dr. Malnar believed were important to qualify for tenure, which Haslam ostensibly could develop over time.

46.   Further, Dr. Malnar did not support the un-sanctioned faculty petition(s) distributed by former HU/Com Chair Beck in support of Haslam's bid for tenure.

47.   The Tenure Committee Chair recommended Haslam be granted a time extension to concentrate on building his tenure package for resubmission in two years' time.

48.   At or near the same time, Lustyk campaigned and lobbied the Faculty Speaker of the ERAU Prescott campus in support of Haslam's tenure. The Faculty Speaker, however, upheld the decision of the Tenure Committee to deny Haslam tenure.

49.   During the summer of 2018, in the absence of several faculty members, including but not limited to the Tenure Committee Chair, Lustyk continued to campaign and lobby in support of Haslam's tenure.

50.   In or near October of 2018, Haslam was awarded retroactive tenure, effective beginning the Fall 2018 semester.

8

1     51.    Along with Haslam's tenure and promotion was an escalation of his abuse

2 of authority and power, including but not limited to overt and/or covert discrimination

3 against Dr. Malnar.

4     52.    During the CAS retreat in late-August 2018, as a lead-in to the Fall 2018

5 semester, Dr. Malnar began to experience Lustyk's attempts to segregate Dr. Malnar from

6 his colleagues.

7     53.    Lustyk gave a PowerPoint slide presentation, inviting all "Tenured Full

8 Professors" to monthly breakfast. As the only non-tenured full Professor on the ERAU

9 Prescott campus, it was clear that Lustyk singled out Dr. Malnar, intentionally excluding

10 Dr. Malnar from the monthly breakfast, thereby sanctioning and condoning Haslam's

11 exclusionary tactics.

12     54.    Haslam also prepared a PowerPoint slide presentation at the August 2018

13 CAS retreat, which segregated Dr. Malnar from HU/COM.  A PowerPoint slide claimed:

14 "6 TT [tenure-track] faculty gave presentations at 8 conferences."[2]  Both Haslam and

15 Lustyk were aware that Dr. Malnar had delivered a one-day poetry workshop in the

16 summer of 2018 at the "Writing the Rockies" international conference held at Western

17 Colorado University in Gunnison, Colorado.  Haslam's PowerPoint slide presentation

18 excluded Dr. Malnar and failed to recognize his contributions to HU/COM.

19     55.    During 2018 and 2019, Haslam and/or Lustyk excluded Dr. Malnar from all

20 *ad-hoc* search committees (a total of four committees).  Lustyk and/or Haslam exercised

21 control over the *ad-hoc* committees.  Dr. Malnar had made written appeals to Lustyk and

22 Haslam for inclusion on the *ad-hoc* committees, including making references to Faculty

23 Handbook policy that directs committee participation on an equitable basis (Part III,

24 Section 6.11).  Not only are such committees important to the development of ERAU,

25

26

---

27  [2] Beck gave the presentation in Haslam's absence. Beck is the unofficial "Associate Chair"

28 of HU/COM, though this position does not exist in the Faculty Handbook.

1 CAS, and HU/COM, but faculty-participation is vital to the Service portion of the APE

2 supporting annual contract renewal for Dr. Malnar as a non-tenured full Professor.

3     56.    Haslam and/or Lustyk created conditions designed to exclude Dr. Malnar

4 from committee membership and to segregate Dr. Malnar from fellow HU/COM

5 colleagues. For example, Haslam cut committee membership down to four people: three

6 department members plus one outside member (with 7 eligible full-time faculty members

7 from HU/COM for two search committees, Dr. Malnar was the number 7).

8     57.    Haslam also rejected Dr. Malnar's request to participate on another search

9 committee on the grounds that Dr. Malnar did not teach the course -- technical writing –

10 though Dr. Malnar is qualified to teach said course.

11     58.    Haslam was aware that Dr. Malnar had been a writing teacher at ERAU since

12 1998, had been teaching the majority of HU/COM freshman composition courses, and was

13 engaged in writing a freshman-composition textbook.

14     59.    On or about October 9, 2018, Beck told Dr. Malnar that Haslam stated (about

15 Dr. Malnar) that Haslam wants junior faculty with "younger perspectives" on his

16 [Haslam's] committees. Beck also stated to Dr. Malnar that Haslam thinks Dr. Malnar is a

17 "dinosaur."

18     60.    As HU/COM Chair, Haslam also controlled HU/COM teaching assignments.

19 Haslam showed preferential treatment to younger Assistant Professor faculty members

20 over Dr. Malnar. Haslam assigned one particular junior faculty member several HU/COM

21 senior-level (400-level) course teaching assignments, despite the fact that Dr. Malnar, a

22 full Professor and senior-level faculty member, was qualified to teach 400-level courses.

23     61.    These HU/COM 400-level courses are "team-taught" with engineering

24 professors and, therefore, HU/COM professors generally are not required to participate on

25 a weekly basis. Thus, 400-level courses are often less labor-intensive, as compared to

26 freshmen-level composition courses such as COM 122.

27     62.    Haslam assigned Dr. Malnar a full load of freshman level composition

28 courses ("**COM 122**"), at late-hour time-slots.  For example, out of the seven COM 122

1  classes taught by full-time HU/COM faculty during the Fall 2018 semester, Haslam
2  assigned four (4) to Dr. Malnar, all scheduled in late afternoon / early evening time slots.

3      63.     Despite Dr. Malnar's ongoing schedule and long-term experience teaching a
4  full load of COM 122 courses, Dr. Malnar was excluded from participating in important
5  COM 122 accreditation and assessment activities. Despite Dr. Malnar's written request to
6  Lustyk and Haslam to participate as a senior faculty member to help develop the writing
7  program with the junior faculty member; and despite that such activity would have been
8  considered to be significant toward HU/COM department service, not only important to
9  CAS and ERAU's general education program, but also to Dr. Malnar's annual
10 performance evaluations and annual contract renewal, Haslam and/or Lustyk instead
11 assigned this assessment task to a part-time adjunct Professor.  Such actions were contrary
12 to CAS philosophy that "the role of Department Service [for full-time faculty] is highly
13 significant.  Department-level service can vary greatly but includes service necessary to
14 running degree programs and general education courses . . .."

15     64.     Dr. Malnar was also denied HU 145 (Themes in the Humanities) assessment
16 activities.

17     65.     Additionally, Haslam did not respond to Dr. Malnar's written requests to
18 create new Humanities 140x courses, despite ERAU's current trend in general education
19 plans to eliminate Humanities 145 courses from the course catalog.  Developing new
20 courses with Haslam's support would potentially serve to avoid elimination of these
21 courses altogether from HU/COM.  Dr. Malnar taught a full course load of Humanities 145
22 courses for several spring semesters, some of which had been very successful. These
23 courses were developed by Dr. Malnar and recognized in the teaching portion of his
24 application package for promotion to full Professor.

25     66.     Shortly after Haslam's retroactive tenure award, in or near early November
26 of 2018 Dr. Malnar received an unexpected email from Haslam stating that he [Haslam]
27 was assigning Dr. Malnar a 5th course teaching-overload for the Spring 2019 semester on
28 the grounds of "lack of service," another example of disparate treatment on the part of

11

Haslam. This particular workload assignment was inconsistent with Faculty Handbook procedure, which typically discourages such assignments. Haslam had not only denied Dr. Malnar committee participation that was valuable to Dr. Malnar's APE service-related duties, his decision -- supported by Lustyk -- was based upon an unsanctioned 15-credit workload template that had failed to gain approval by the Faculty Senate the previous academic school year. The 15-credit workload template was an experimental template left over from the Chief Academic Officer the previous year. It did not exist for the 2018-2019 academic school year. Like the 2017 syllabi-template that was unsanctioned the previous year, Haslam arbitrarily carried over and applied the non-existent experimental 15-credit workload template, once again subjecting Dr. Malnar to disparate treatment.

67.     Dr. Malnar requested a meeting with Haslam, Lustyk, and Human Resources to discuss the work-overload and other time-sensitive issues with Haslam. At the meeting, which occurred on or near November 17, 2018, without explanation and lacking any reasonable grounds, Lustyk supported Haslam. Contemporaneously therewith, Lustyk and Haslam each issued a MEMORANDUM FOR THE RECORD, containing deceptive rhetoric, employed to make these Defendants' actions appear to be defensible and policy-worthy. Put another way, rather than acknowledging the disparate treatment to which Dr. Malnar had been subjected and taking corrective action, Lustyk continued to condone Haslam's actions.

68.     Further Human Resources failed to take any action.

69.     In or near mid-November of 2018, following Haslam's attempt to overload Dr. Malnar with a 5th course after systematic exclusion from *ad-hoc* search committees, Haslam arbitrarily made the decision to remove the 5th course, conditioned upon Dr. Malnar securing appointment on at least two *ad-hoc* search committees outside CAS by November 16, 2018. Haslam's deadline occurred just three days from the day Haslam made this offer to Dr. Malnar, which was also just three days prior to the Thanksgiving break, an arbitrary and untenable deadline.

70.     Approximately 2 to 3 weeks following Haslam's offer that he would remove the mandated course overload if Dr. Malnar could secure memberships on two search committees, Dr. Malnar was then able to secure memberships on three non-CAS committees.

71.     On or near December 1, 2018 Dr. Malnar notified Haslam and Lustyk of said committee appointments, along with his desires to contribute to HU/COM, to develop general education and work with junior faculty to develop the freshman writing program.

72.     Haslam did not respond to Dr. Malnar's December 1, 2018 email.

73.     Lustyk did not respond to Dr. Malnar's December 1, 2018 email.

74.     In accordance with the Committee Member Evaluation Form, Faculty Handbook, Part III, Attachment E, Dr. Malnar received high written evaluation ratings for his service on two of three non-CAS committees, to wit: (i) College of Security and Intelligence search committee (Spring 2019 semester); and (ii) College of Engineering search committee (Spring 2019 semester).  Further, Dr. Malnar received high verbal appraisal for his service on the College of Security and Intelligence search committee for Fall 2018 semester.

75.     During Spring 2019 semester, Dr. Malnar also taught a full, four-class schedule of HU 145 courses and received reputable student evaluations while simultaneously drafting a manuscript for a freshman-composition textbook.

76.     Haslam oversaw HU/COM faculties' APE's.

77.     Per the Faculty Handbook, Part I, Section 8, a faculty member's APE is due by January 31st of each year.

78.     On or about March 2, 2019, Haslam emailed Dr. Malnar his 2018 APE.

79.     After several years of excellent evaluations which in part contributed to Dr. Malnar's promotion to full Professor, and lacking any reasonably objective grounds, Haslam deemed Dr. Malnar's performance to be sub-standard.

80.     In 2019, Haslam's overall rating of Dr. Malnar for the 2018 APE was Needs Improvement.

81.     Haslam's comments included statements such as "Alan needs to update his pedagogy and become familiar with best practices regarding assignment design and assessment of student work. Alan should also become familiar with research on learning so that he can redesign his pedagogy so it is [in] line with well-known learning principles." Haslam deemed Dr. Malnar's grading scale "unacceptable"; Haslam's condescending comments include that Dr. Malnar "sound[s] like a public school teacher and not a university professor"[3]; that if "Alan seeks to write a composition textbook that he become more involved with the field of composition. His vita fails to show he has ever attended a conference on teaching writing, and with a Ph.D. in literature it is unlikely that he received much training in composition."

82.     Moreover, Haslam excluded many of Dr. Malnar's self-assessment comments for improvement, to make it appear as though Dr. Malnar was intentionally ignoring or refusing to address this component of the APE.

83.     Haslam attempted to have Beck sit in on Dr. Malnar's APE meeting, a breach of Dr. Malnar's confidentiality, as Dr. Malnar never invited or authorized Beck to attend or participate.

84.     An incident involving Haslam and a student also occurred in or near October of 2018.

85.     In or near early October of 2018, Haslam was alerted by the Title IX coordinator that Dr. Malnar had filed a complaint with the Dean of Students office, concerning a student.   Dr. Malnar was unaware that Haslam had been notified of Dr. Malnar's complaint.

86.     Upon receiving notice of the complaint filed by Dr. Malnar, Haslam proceeded to speak with Beck about the complaint, a violation of Dr. Malnar's right to privacy involving personnel matters.

_____

[3] APE dated 01/03/06 states that Dr. Malnar is "excellent *university*-level professor, as indicated by [Malnar's] peer and student evaluations." [emphasis added].

1    87.    Haslam also discussed the complaint with the student.

2    88.    Haslam failed to inform Dr. Malnar that he [Haslam] had discussed the

3  complaint with Beck and with the student-- a complaint that Dr. Malnar, in fact, had

4  initiated with the Dean of Students office pertaining to the student.

5    89.    After Dr. Malnar became aware of Haslam's communication with Beck and

6  with the student, Dr. Malnar then stated his concern for said exclusion and other issues

7  with Haslam during the conflict resolution meeting with Haslam, Lustyk, and Human

8  Resources on November 7, 2018. Dr. Malnar also documented his concern for being

9  excluded from said communication between Haslam, Beck, and the student and other

10  concerns with Haslam in an email written on November 13, 2018, in response to Haslam's

11  MEMORANDUM FOR THE RECORD. Dr. Malnar's email response was carbon-copied

12  to Lustyk and Sara Heffelfinger, Director of Prescott Human Resources.

13    90.    Haslam did not respond to Dr. Malnar's November 13, 2018 email.

14    91.    Lustyk did not respond to Dr. Malnar's November 13, 2018 email.

15    92.    Sara Heffelfinger did not respond to Dr. Malnar's November 13, 2018 email.

16    93.    On or around November 20, 2018, Dr. Malnar received a MEMORANDUM

17  FOR THE RECORD from Lustyk stating that she had discussed the status of mediation

18  with Human Resources administrators, but concluded that "additional mediation [was] not

19  warranted and a faculty performance improvement plan [was] unlikely to be helpful."

20    94.    Haslam then notified Dr. Malnar by email that he (Haslam) received an

21  emailed response from the student but had deleted said response.

22    95.    The University's written policy prohibits retaliation.

23    96.    Dr. Malnar made efforts to address the disparate treatment and/or hostile

24  work environment to which he was subjected at the hands of Haslam, with Lustyk's

25  support and/or negligent apathy.

26    97.    Dr. Malnar engaged in discussions with Ayers and with Lustyk, concerning

27  Haslam's abusive treatment of Dr. Malnar.

28

98.   Dr. Malnar reached out to Lustyk to intervene with respect to Haslam's abusive treatment of Dr. Malnar, but Lustyk ignored Dr. Malnar's requests to intervene.

99.   Dr. Malnar verbally notified Ayers as far back as the spring of 2018 that there were ongoing issues with Haslam and that those issues remained unresolved.

100.   In response, Ayers directed Dr. Malnar *back* to Lustyk; Lustyk did nothing.

101.   Beginning in March of 2019, which was around the middle of the Spring semester, in an attempt to portray Dr. Malnar as insubordinate, Haslam subjected Dr. Malnar to ongoing abuse and harassment over perceived issues concerning Dr. Malnar's grading protocol.

102.   In or near March of 2019, Dr. Malnar retained counsel to assist in addressing the ongoing issues set forth herein above.

103.   On March 22, 2019, ERAU, through its general counsel, advised Dr. Malnar's counsel that refusal by Dr. Malnar to communicate directly with Dr. Malnar's superiors (Chancellor Ayers or Dean Lustyk) or with Human Resources ("**HR**"), would be deemed to be insubordination leading to dismissal from ERAU.

104.   Dr. Malnar was not comfortable communicating with Haslam or with Lustyk, the perpetrators.

105.   Haslam was Dr. Malnar's immediate superior.

106.   Lustyk was the Dean of CAS.

107.   ERAU claims that its Culture is that "[w]e speak candidly and we listen well. We hold that if every involved party has taken part in a decision, then everyone will support the decision. We believe that clear and frequent communication is essential for our safety, our relationships, and our productivity."

108.   Despite his reservations about doing so, in a good faith effort to communicate directly with Lustyk -- or face dismissal from ERAU -- on or about March 25, 2019, Dr. Malnar attempted to personally deliver correspondence to Lustyk, which Lustyk immediately rebuffed (the "**Lustyk Communication**").

109.   Contrary to ERAU's alleged philosophy of open communication, Lustyk refused to accept the correspondence from Dr. Malnar and instead contacted campus security, in a thinly veiled effort to portray herself – the *Dean* of CAS – as the victim.

110.   ERAU created an untenable situation for Dr. Malnar.

111.   Upon information and belief, in or near August of 2019, several ERAU faculty and staff lodged a complaint with ERAU arising out of their concern about Lustyk's actions and/or behavior, including actions and/or behavior toward Dr. Malnar.

112.   Upon information and belief, ERAU summarily closed the August 2019 complaint without an investigation.

113.   The Faculty Handbook states that faculty members are encouraged to examine their personnel files periodically.

114.   In or near mid-March of 2019, Dr. Malnar was denied access to his personnel file within 48 hours of request per ERAU policy, and was informed that ERAU's general counsel – rather than HR -- would be handling the personnel file request, even though ERAU's general counsel had previously stated that Dr. Malnar needed to communicate with his superiors or HR to resolve matters, or face dismissal.  On or about April 5, 2019, ERAU's general counsel emailed a four-part email to Dr. Malnar's counsel. Missing was important documentation that was supposed to be maintained in Dr. Malnar's personnel file for a minimum requisite period of time.  Dr. Malnar's personnel file, upon information and belief, had been altered and/or sanitized.

115.   On March 22, 2019, Haslam notified Dr. Malnar that he (Malnar) would be removed from the physical office that he had occupied for several years, beginning in the Fall 2019 semester, thereby physically segregating Dr. Malnar from his HU/COM Department colleagues, in order to make room for newer junior faculty members.

116.   On April 4, 2019, ERAU Office of Records alleged a FERPA (Family Educational Rights and Privacy Act) violation that was eventually withdrawn.  Upon information and belief Lustyk and/or Haslam complained about this alleged violation.

17

117. The Faculty Handbook, Part I, Section 13, states that if ERAU has not delivered a letter of non-renewal to a faculty member by March 1, then the faculty member should expect to receive a contract in April.

118. ERAU did not deliver a letter of non-renewal to Dr. Malnar by March 1, 2019.

119. Dr. Malnar, therefore, had the reasonable expectation that ERAU would present a contract for the 2019-2020 academic year similar to the 2018-2019 academic year, namely a 9-month full-time faculty contract.

120. On April 15, 2019, Dr. Malnar received an email from an ERAU employee, stating "I was informed that Dr. Ayers will be handling your contract."

121. On or about April 23, 2019, ERAU Chancellor Ayers presented Dr. Malnar with a document entitled "Faculty Phased Retirement Agreement," a half-time teaching contract for the 2019-2020 academic year at 50% of his full-time salary. Said Agreement included language purporting to waive all discrimination claims against ERAU, as follows:

> I understand and acknowledge that my decision to participate in the [ERAU] Phased Retirement Plan (the "Plan") is voluntary and binding. I understand that upon retirement from [ERAU], I will surrender my tenure rights (if applicable) and I will release the University from any claim(s) I may have under the law of contract or torts, including the Age Discrimination in Employment Act; the Older Workers Benefit Protection Act; the Civil Rights Act; the Fair Labor Standards Act; the American's [*sic*] with Disabilities Act; or any other federal, state, or local statutory or common laws relating to employment discrimination or employment.

122. The Faculty Phased Retirement Agreement did not comply with the Older Workers Benefit Protection Act [OWBPA].

123. The Faculty Phased Retirement Agreement was inconsistent with prior contracts, in that it contained a phased retirement obligation, from 08/16/2019 to 05/15/2020, a waiver of all claims against ERAU, including claims of discrimination, and an acknowledgement by Dr. Malnar that Dr. Malnar had acted unprofessionally on March 25, 2019, in connection with the Lustyk Communication.

18

1    124.   Dr. Malnar did not sign the Faculty Phased Retirement Agreement.

2    125.   The Faculty Handbook promotes a progressive discipline policy.

3    126.   Throughout two decades of employment, Dr. Malnar had consistently
4 received at least satisfactory to excellent APEs, with no disciplinary history.

5    127.   On May 6, 2019, ERAU President Barry Butler issued a written letter of
6 termination to Dr. Malnar, alleging "unacceptable performance and conduct," in violation
7 of ERAU's progressive discipline policy, in violation of Dr. Malnar's right to due process
8 pursuant to Part I, Section 13.5 of the Faculty Handbook, in violation of ERAU's HAND
9 Policy, and/or in violation of OWBPA.

10    128.   Moreover, ERAU's termination was a pre-text, and Defendants' actions were
11 taken to deliberately and willfully force Plaintiff from his position.  Plaintiff's age and/or
12 sex (gender) was a determining reason for the action of ERAU in terminating Plaintiff.

13    129.   Pursuant to the Faculty Handbook, Part I, Section 14, on or about May 10,
14 2019, Dr. Malnar grieved ERAU's May 6, 2019, written letter of termination from
15 President Barry Butler.

16    130.   On June 3, 2019, ERAU prematurely denied the grievance appeal.

17    131.   In direct violation of A.R.S. § 14-1463, ERAU's HAND Policy, OWBPA
18 and/or other applicable law, Defendant ERAU and its agents and/or employees engaged
19 in discriminatory acts described in the Charge of Discrimination attached to this
20 Complaint, as **Exhibit "1"**.

21    132.   Defendants' conduct, acts and/or omissions were breaches of the implied
22 covenant of good faith and fair dealing, were discriminatory, were retaliatory, and/or were
23 negligent.

24                    **COUNT ONE**

25                       **Estoppel**

26    133.   Plaintiff hereby repeats and realleges the allegations set forth in the
27 preceding paragraphs, as though fully set forth herein and incorporates the same herein by
28 this reference.

134. The Faculty Handbook states that if ERAU has not delivered a letter of non-renewal to a faculty member by March 1, then the faculty member should expect to receive a contract in April.

135. ERAU did not deliver a letter of non-renewal to Dr. Malnar by March 1, 2019.

136. On April 15, 2019, Dr. Malnar received an email from an ERAU employee, indicating that ERAU's Chancellor was going to be handling his contract.

137. Dr. Malnar reasonably had the expectation that ERAU would present a contract for the 2019-2020 academic year similar to the 2018-2019 academic year, namely a 9-month full-time faculty contract.

138. On or about April 23, 2019, Chancellor Ayers presented Dr. Malnar with a document entitled "Faculty Phased Retirement Agreement," a half-time teaching contract at 50% of his full-time salary that included language purporting to waive all discrimination claims against ERAU, and an acknowledgment that Dr. Malnar had acted unprofessionally in connection with the Lustyk Communication.

139. The Faculty Phased Retirement Agreement was inconsistent with prior contracts, in that it contained a phased retirement obligation, from 08/16/2019 to 05/15/2020, and a waiver of all claims against ERAU, including claims of discrimination.

140. ERAU President Barry Butler issued a letter of termination on or about May 6, 2019, in violation of Plaintiff's right to due process pursuant to Rule 13.5 of the Faculty Handbook, ERAU's progressive discipline policy, ERAU's HAND Policy, and/or OWBPA.

141. Thereafter, Plaintiff submitted a grievance appeal to ERAU which was prematurely denied.

142. ERAU should reasonably have foreseen that its failure to provide a non-renewal notice to Plaintiff on March 1, 2019, and its subsequent April 15, 2019, communication to Dr. Malnar that Chancellor Ayers would be handling Plaintiff's

contract, would cause Dr. Malnar to expect he would receive a full-time faculty contract for the 2019-2020 academic year.

143.   Plaintiff, to his detriment, relied upon the lack of non-renewal notice by March 1, 2019, and ERAU's April 15, 2019, email to Plaintiff stating that Chancellor Ayers would be handling his contract.

144.   Moreover, ERAU is estopped from denying the foregoing representations.

145.   As a result of ERAU's acts and/or omissions, Plaintiff was deprived of the reasonable opportunity to search for and obtain full-time professor teaching positions for the 2019-2020 academic year, which has caused damage to Plaintiff in an amount to be proven at trial.

## COUNT TWO

### Breach of the Implied Covenant of Good Faith and Fair Dealing

146.   Plaintiff hereby repeats and realleges the allegations set forth in the preceding paragraphs, as though fully set forth herein and incorporates the same herein by this reference.

147.   An implied covenant of good faith and fair dealing existed in the contracts and/or agreements Plaintiff and ERAU.

148.   All parties had a duty not to impair the right of the other party to receive the benefits that flow from any agreement or contractual relationship, including but not necessarily limited to the full-time faculty contract or contracts, Faculty Handbook and the documents and policies incorporated therewith, and/or other agreements between the parties.

149.   Plaintiff and ERAU negotiated and completed several full-time faculty contracts over the course of Plaintiff's employment with ERAU.

150.   The retaliation, abuse of power, discrimination, negligence, and/or breaches committed by Defendants against Plaintiff breached the implied covenant of good faith and fair dealing inherent in all contracts in Arizona, causing Plaintiff to be deprived of the benefits of his agreement with ERAU.

1   151.   Defendants' breach of the implied duty of good faith and fair dealing has

2   caused damage to Plaintiff in an amount to be proven at trial.

3                                    **COUNT THREE**

4                                      **Negligence**

5   152.   Plaintiff hereby repeats and realleges the allegations set forth in the

6   preceding paragraphs, as though fully set forth herein and incorporates the same herein by

7   this reference.

8   153.   Defendants' actions in not notifying Plaintiff prior to March 1, 2019, that he

9   would be receiving a contract, substantially different that his prior contract, constitutes a

10  negligent omission by Defendants.

11  154.   Defendants' actions in prematurely dismissing Plaintiff's grievance on June

12  13, 2019, was negligent conduct.

13  155.   ERAU President Barry Butler issued a letter of termination on or about May

14  6, 2019, in violation of Plaintiff's right to due process pursuant to Part I, Section 13.5 of

15  the Faculty Handbook, ERAU's progressive discipline policy, ERAU's HAND Policy,

16  and/or OWBPA.

17  156.   Thereafter, Plaintiff submitted a grievance appeal to ERAU which ERAU

18  prematurely denied under the Faculty Handbook, Part I, Section 14, on June 3, 2019.

19  157.   Defendants are liable to Plaintiff for their negligent conduct, acts and/or

20  omissions and the concomitant damages that Plaintiff suffered as a result.

21                                    **COUNT FOUR**

22                    **Intentional Infliction of Emotional Distress**

23  158.   Plaintiff hereby repeats and realleges the allegations set forth in the

24  preceding paragraphs, as though fully set forth herein and incorporates the same herein by

25  this reference.

26  159.   The conduct of Defendants previously alleged was intentional, outrageous,

27  and unconscionable in its scope and severity, and was without legal justification.

28  160.   Such actions caused severe emotional distress to Plaintiff.

22

1     161.    Defendants are liable to Plaintiff for intentional infliction of emotional

2 distress and the damages he suffered as a result.

3 **COUNT FIVE**

4 **Negligent Infliction of Emotional Distress**

5     162.    Plaintiff hereby repeats and realleges the allegations set forth in the

6 preceding paragraphs, as though fully set forth herein and incorporates the same herein by

7 this reference.

8     163.    The conduct of Defendants previously alleged, unintentionally caused

9 emotional distress and bodily harm to Plaintiff.

10     164.    Defendants knew or should have known that their conduct involved an

11 unreasonable risk of causing the distress and, from the facts known to them, Defendants

12 knew or should have known that the distress might result in illness or bodily harm.

13     165.    As a result, Defendants are liable to Plaintiff for the tort of negligent

14 infliction of emotional distress and the damages incurred therefrom.

15 **COUNT SIX**

16 **Wrongful Discharge in violation of public policy – Common Law**

17     166.    Plaintiff hereby repeats and realleges the allegations set forth in the

18 preceding paragraphs, as though fully set forth herein and incorporates the same herein by

19 this reference.

20     167.    As a proximate result of Defendants' acts and/or omissions, Defendants are

21 liable to Plaintiff for wrongful discharge in violation of public policy established by

22 common law.

23 **COUNT SEVEN**

24 **Violation of A.R.S. § 41-1463(B) / 29 U.S.C. § 626 (Age) / Title VII of the Civil Rights**

25 **Act (sex/gender) -- Discrimination/Hostile Work Environment**

26     168.    Plaintiff hereby repeats and realleges the allegations set forth in the

27 preceding paragraphs, as though fully set forth herein and incorporates the same herein by

28 this reference.

23

169.   It is unlawful in an employment practice for an employer to discharge an individual because of the individual's sex (gender) or age.

170.   Plaintiff is a male over the age of 40.

171.   Defendants are employees within the meaning of A.R.S. § 41-1461 and/or within the meaning of 29 U.S.C. § 630.

172.   Defendants' unlawful conduct, as previously alleged, has proximately caused Plaintiff actual damages.

## COUNT EIGHT

### Injunctive Relief

173.   Plaintiff hereby repeats and realleges the allegations set forth in the preceding paragraphs, as though fully set forth herein and incorporates the same herein by this reference

174.   Plaintiff is also entitled to equitable relief in the form an injunction, requiring Defendant ERAU to reinstate Plaintiff to his position of employment, free from discrimination, with all appropriate retroactive job-related benefits.

175.   Under A.R.S. § 41-1481, and/or 29 U.S.C. § 626, the Court may order such affirmative action as may be appropriate or any other equitable relief as may be appropriate where the employer intentionally engages in an unlawful employment practice.

176.   Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein and is entitled to equitable relief as deemed appropriate by the Court in order to require the Defendants to comply with the law in the future.

## DAMAGES

177.   As a direct and proximate result of the aforesaid acts and/or omissions of Defendants, Plaintiff has sustained damages for: (1) loss of income and employment benefits, past and future; (2) loss of reputation; (3) emotional distress and pain and suffering and anxiety experienced and, with reasonable probability, will be experienced in the future; (4) medical, psychological, and/or psychiatric expenses experienced and

1 reasonably probable to be experienced in the future; (5) physical symptoms related to
2 emotional distress such as loss of appetite, elevated blood pressure, sleep disturbances,
3 extreme nervousness/anxiety, and/or headaches and stomach upset; (6) exemplary
4 damages; and (8) compensatory, consequential, incidental, and general damages.

5 <u>**DEMAND FOR TRIAL BY JURY**</u>

6 Plaintiff hereby demands a jury trial in this matter on all causes of action asserted
7 now or in the future.

8 <u>**PRAYER FOR RELIEF**</u>

9 WHEREFORE, Plaintiff seeks judgment in his favor and against Defendants,
10 jointly and severally:

11     a.     For damages equal to Plaintiff's back pay and benefits through the present,
12 in an amount to be proven at trial;

13     b.     For reinstatement to Plaintiff's previous post or, in the alternative, for front
14 pay, in an amount to be proven at trial;

15     c.     For liquidated damages in an amount equal to Plaintiff's actual damages, in
16 an amount to be proven at trial;

17     d.     For exemplary damages in an amount to be proven at trial;

18     e.     For such other relief and damages as may be permitted as a matter of law;

19     f.     For attorney fees and costs of suit pursuant to A.R.S. §12-341, 41-1481, 29
20 U.S.C. § 626, and/or any other applicable rule or law;

21     g.     For pre- and post-judgment interest, as allowed by law;

22

23

24

25

26

27

28 / / /

1    h.    For such other and further relief as may be requested and/or deemed

2  appropriate by this Court.

3        **DATED** this 23rd day of June, 2020.

4                                  MUSGROVE DRUTZ KACK & FLACK, PC

5

6                                  By   /s/ Sharon M. Flack
                                        Mark W. Drutz
7                                       Sharon M. Flack
                                        Jeffrey D. Gautreaux
8                                       Attorneys for Plaintiff Alan J. Malnar

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT "1"

| **EMPLOYMENT CHARGE OF DISCRIMINATION**, Page 1 of 1<br>This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form. | AGENCY<br>■ FEPA<br>☐ EEOC | CHARGE NUMBER |
| --- | --- | --- |

## ARIZONA ATTORNEY GENERAL'S OFFICE, CIVIL RIGHTS DIVISION AND EEOC
*State or Local Agency, if any*

| NAME *(Indicate Mr., Mrs., Mrs.)*<br>Mr. Alan Malnar, Ph.D. | | TELEPHONE NUMBER *(Include Area Code)*<br>928-445-5935 |
| --- | --- | --- |
| STREET ADDRESS<br>P.O. Box 2720 | CITY, STATE AND ZIP CODE<br>Prescott, Arizona 86302 | DATE OF BIRTH<br>8/17/55 |
| LAW FIRM NAME/ATTORNEY NAME<br>Musgrove, Drutz, Kack, & Flack PC c/o Sharon | | TELEPHONE NUMBER *(Include Area Code)*<br>928-445-5935 |
| STREET ADDRESS<br>P.O. Box 2720 | CITY, STATE AND ZIP CODE<br>Prescott, Arizona 86302 | ATTORNEY EMAIL<br>SFlack@mdkflaw.com |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICE SHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME. *(If more than one, list below.)*

| NAME<br>Embry Riddle Aeronautical University | NUMBER OF EMPLOYEES/MEMBERS<br>Cat. U Unknown | TELEPHONE NUMBER *(Include Area Code)*<br>928-777-6600 |
| --- | --- | --- |
| STREET ADDRESS<br>3700 Willow Creek Road | CITY, STATE AND ZIP CODE<br>Prescott, Arizona 86301 | COUNTY<br>Yavapai County |

| CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box(es))*<br>☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN  ☒ AGE<br><br>☒ RETALIATION  ☐ DISABILITY  ☐ GENETIC TEST RESULTS  ☐ OTHER (Specify) | DATE DISCRIMINATION TOOK PLACE<br>EARLIEST *(ADEA/EPA)*  LATEST *(ALL)*<br>December        June 2019<br>2018<br>☒ Continuing Action |
| --- | --- |

EXPLAIN THE PARTICULARS OF WHAT TOOK PLACE *(If additional space is needed, attach extra sheet(s));*

**I.** **PERSONAL HARM:** I was subjected to unequal treatment because of my sex, Male, my age. I was subsequently terminated as a form of retaliation.

**II.** **RESPONDENTS REASON FOR ADVERSE ACTION:** None.

**III.** **DISCRIMINATION STATEMENT:** I believe Respondent discriminated against me because of my age, 63 years (DOB 8/17/55), in violation of the Arizona Civil Rights Act, as amended, and Title VII of the Civil Rights Act of 1964, as amended. The particulars are:

**A.** In or around August 1998, I began my employment with Respondent as an Adjunct Professor in the College of Arts and Sciences. My above average performance has allowed me to ascend to the highest rank of professorship, resulting in my promotion to Full Professor. However, I was non-tenured.

**B.** I have endured a history of unequal treatment from Dean of College of Arts and Sciences, Kathleen Lustyk (Female), and Department Chair, Matthew Haslam (Male). For example, I was excluded from activities that impact my Annual Performance Evaluation (APE).

**C.** In or around December 2018, I was excluded from important committee work due to conditions placed upon me by my department chair. Also, I was assigned a five course overload in Spring of 2019 teaching the same class due to my alleged lack of service on committees. My younger colleagues were not excluded from the service committees, and not subjected to the same course overload.

**D.** On March 12, 2019, I retained counsel to help me address issues with my negative APE, and the previous months of differential treatment that contributed to and impacted all aspects of my APE, and jeopardized my position as a non-tenured full professor.

**E.** On March 18, 2019, my attorney sent a letter of representation to the university's General Counsel,

| I WANT THIS CHARGE FILED WITH BOTH THE EEOC AND THE STATE OR LOCAL AGENCY, IF ANY. I WILL ADVISE THE AGENCIES IF I CHANGE MY ADDRESS OR TELEPHONE NUMBER AND I WILL COOPERATE FULLY WITH THEM IN THE PROCESSING OF MY CHARGE IN ACCORDANCE WITH THEIR PROCEDURES. | SIGNATURE OF CHARGING PARTY AND DATE:<br>*Alan Malnar*  7/31/19 |
| --- | --- |
| I SWEAR OR AFFIRM THAT I HAVE READ THE ABOVE CHARGE AND THAT IT IS TRUE TO THE BEST OF MY KNOWLEDGE, INFORMATION, AND BELIEF. | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(Month, Day, Year)*<br>July 31 2019<br><br>CYNDI A ENGLISH<br>NOTARY PUBLIC<br>STATE OF COLORADO<br>NOTARY ID 20174017016<br>MY COMMISSION EXPIRES APRIL 20, 2021 |

8007467/Alan Malnar, Ph.D./JS

| EMPLOYMENT CHARGE OF DISCRIMINATION, Page 2 of 2 | CHARGE NUMBER |
|---|---|

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

## ARIZONA ATTORNEY GENERAL'S OFFICE, CIVIL RIGHTS DIVISION AND EEOC

CASE NAME:  ALAN MALNAR, PH.D. v. EMBRY RIDDLE AERONAUTICAL UNIVERSITY

Charles Sevastos, concerning the hostile work environment created by Lustyk and Haslam.

F. On March 20, 2019, Sevastos responded that "he needs to address that concern internally through proper procedures." "His insubordination will lead to his dismissal from the university if he continues to refuse to speak with his supervisor and campus leadership."

G. On March 22, 2019, I received an email from Haslam informing me that an older colleague and I were going to be physically relocated and separated from the department to free up space needed for new faculty who are under forty years old.

H. On March 25, 2019, I attempted to deliver a written letter to Lustyk, which resulted in her calling security on me.

I. In or around April 2019, several meetings with Chancellor, Frank Ayers, were not productive and my issues were not resolved.

J. On May 6, 2019, I was terminated for alleged cause in breach of university policy.

K. On May 10, 2019, I requested a grievance hearing.

L. On June 3, 2019, I was denied a grievance hearing.

M. I believe and therefore allege that Respondent discriminated against me because of my sex, Male, and my age, and retaliated against me for opposing a practice made unlawful.

| I WANT THIS CHARGE FILED WITH BOTH THE EEOC AND THE STATE OR LOCAL AGENCY, IF ANY. I WILL ADVISE THE AGENCIES IF I CHANGE MY ADDRESS OR TELEPHONE NUMBER AND I WILL COOPERATE FULLY WITH THEM IN THE PROCESSING OF MY CHARGE IN ACCORDANCE WITH THEIR PROCEDURES. | SIGNATURE OF CHARGING PARTY AND DATE: Alan Malnar  7/31/19 |
|---|---|
| I SWEAR OR AFFIRM THAT I HAVE READ THE ABOVE CHARGE AND THAT IT IS TRUE TO THE BEST OF MY KNOWLEDGE, INFORMATION, AND BELIEF. | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Month, Day, Year)  July 31 2019 |
| 8007467/Alan Malnar, Ph.D./JS | CYNDI A ENGLISH NOTARY PUBLIC STATE OF COLORADO NOTARY ID 20174017016 MY COMMISSION EXPIRES APRIL 20, 2021  Cyndi A English |

FILED
DONNA McQUALITY
CLERK, SUPERIOR COURT
06/23/2020 4:19PM
BY: ESIEH
DEPUTY

Case No.: P1300CV202000532
HON. DAVID MACKEY

Person/Attorney Filing: Sharon M. Flack
Mailing Address: P.o. Box 2720
City, State, Zip Code: Prescott, AZ 86302
Phone Number: (928) 445-5935
E-Mail Address: admin@mdkflaw.com
[ □ ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 021590, Issuing State: AZ

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF YAVAPAI

| | |
|---|---|
| Alan J. Malnar<br>Plaintiff(s),<br>v.<br>Embry-Riddle Aeronautical<br>University, Inc., et al.<br>Defendant(s). | Case No.<br><br>**CERTIFICATE OF<br>COMPULSORY ARBITRATION** |

I certify that I am aware of the dollar limits and any other limitations set forth by the
Local Rules of Practice for the Yavapai County Superior Court, and I further certify that
this case IS NOT subject to compulsory arbitration, as provided by Rules 72 through 77 of
the Arizona Rules of Civil Procedure.

RESPECTFULLY SUBMITTED this

By: Sharon M. Flack /s/
    Plaintiff/Attorney for Plaintiff

**In the Superior Court of the State of Arizona**
**In and For the County of** Yavapai

Case Number _____

**CIVIL COVER SHEET- NEW FILING ONLY**
(Please Type or Print)

Plaintiff's Attorney Sharon M. Flack

Attorney Bar Number 021590, AZ

Plaintiff's Name(s): (List all)
Alan J. Malnar

Plaintiff's Address:
_____
_____
_____

(List additional plaintiffs on page two and/or attach a separate sheet).

Defendant's Name(s): (List All) Embry-Riddle Aeronautical University, Inc., M.
Kathleen Burkhart Lustyk, John Doe Lustyk, Matthew Haslam, Jane Doe

(List additional defendants on page two and/or attach a separate sheet)

## NATURE OF ACTION
(Place an "X" next to the **one** case category that most accurately describes your primary case.)

**TORT MOTOR VEHICLE:**
☐ Non-Death/Personal Injury
☐ Property Damage
☐ Wrongful Death

**TORT NON-MOTOR VEHICLE:**
☐ Negligence
☐ Product Liability – Asbestos
☐ Product Liability – Tobacco
☐ Product Liability – Toxic/Other
☐ Intentional Tort
☐ Property Damage
☐ Legal Malpractice
☐ Malpractice – Other professional
☐ Premises Liability
☐ Slander/Libel/Defamation
☐ Other (Specify) _____

**MEDICAL MALPRACTICE:**
☐ Physician M.D.        ☐ Hospital
☐ Physician D.O         ☐ Other

**CONTRACTS:**
☐ Account (Open or Stated)
☐ Promissory Note
☐ Foreclosure
☐ Buyer-Plaintiff
☐ Fraud
☐ Other Contract (i.e. Breach of Contract)
☐ Excess Proceeds-Sale
☐ Construction Defects (Residential/Commercial)
　　☐ Six to Nineteen Structures
　　☐ Twenty or More Structures

**OTHER CIVIL CASE TYPES:**
☐ Eminent Domain/Condemnation
☐ Eviction Actions (Forcible and Special Detainers)
☐ Change of Name
☐ Transcript of Judgment
☐ Foreign Judgment
☐ Quiet Title

AZTurboCourt.gov Form Set #4705154

June 7, 2018 　　　　　　　　　 Page 1 　　　　　　　　　 AOCCV10F-070118

☐ Forfeiture
☐ Election Challenge
☐ NCC- Employer Sanction Action (A.R.S. §23-212)
☐ Injunction against Workplace Harassment
☐ Injunction against Harassment
☐ Civil Penalty
☐ Water Rights (Not General Stream Adjudication)
☐ Real Property
☐ Special Action against Lower Courts
   (See lower court appeal cover sheet in Maricopa)
☐ Immigration Enforcement Challenge (A.R.S. §§1-501, 1-502, 11-1051)

**UNCLASSIFIED CIVIL:**
☐ Administrative Review
   (See lower court appeal cover sheet in Maricopa)
☐ Tax Appeal
(All other tax matters must be filed in the AZ Tax Court)
☐ Declaratory Judgment
☐ Habeas Corpus

☐ Landlord Tenant Dispute- Other
☐ Declaration of Factual Innocence (A.R.S. §12-771)
☐ Declaration of Factual Improper Party Status
☐ Vulnerable Adult (A.R.S. §46-451)
☐ Tribal Judgment
☐ Structured Settlement (A.R.S. §12-2901)
☐ Attorney Conservatorships (State Bar)
☐ Unauthorized Practice of Law (State Bar)
☐ Out-of-State Deposition for Foreign Jurisdiction
☐ Secure Attendance of Prisoner
☐ Assurance of Discontinuance
☐ In-State Deposition for Foreign Jurisdiction
☐ Eminent Domain– Light Rail Only
☐ Interpleader– Automobile Only
☐ Delayed Birth Certificate (A.R.S. §36-333.03)
☒ Employment Dispute- Discrimination
☐ Employment Dispute-Other
☐ Verified Rule 45.2 Petition
☐ Other (Specify) _____

**RULE 26.2 DISCOVERY TIER OR AMOUNT PLEADED:**
(State the amount in controversy pleaded or place an "**X**" next to the discovery tier to which the pleadings allege the case would belong under Rule 26.2.)

☐ Amount Pleaded $_____     ☐ Tier 1     ☐ Tier 2     ☒ Tier 3

**EMERGENCY ORDER SOUGHT:**
☐ Temporary Restraining Order    ☐ Provisional Remedy    ☐ OSC    ☐ Election Challenge
☐ Employer Sanction    ☐ Other (Specify) _____

**COMMERCIAL COURT (Maricopa County Only)**
☐ This case is eligible for the commercial court under Rule 8.1, and plaintiff requests assignment of this case to the commercial court. More information on the commercial court, including the most recent forms, are available on the court's website at https://www.superiorcourt.maricopa.gov/commercial-court/.

Additional Plaintiff(s)

_____

_____

Additional Defendant(s)
Haslam, ABC Corporations I-X, XYZ Partnerships I-X, John Does I-X,
Jane Does I-X

AZTurboCourt.gov Form Set #4706/54

Attachment Page __1__ (of __1__ )

To Civil Cover Sheet

---

**ATTORNEY INFORMATION:**
ATTORNEY FILING - PRIMARY ATTORNEY:
Sharon M. Flack
Bar Number: 021590, Issuing State: AZ
Law Firm: Musgrove Drutz Kack & Flack, PC
Address: P.o. Box 2720

Prescott, AZ 86302
Telephone Number: (928) 445-5935
Email: admin@mdkflaw.com

ATTORNEY #2
Mark D. Drutz
Bar Number: 006772, Issuing State: AZ
Law Firm: Musgrove Drutz Kack & Flack, PC
Address: P.o. Box 2720
Prescott, AZ 86302
Telephone Number: (928)445-5835

ATTORNEY #3
Jeffrey D. Gautreaux
Bar Number: 028104, Issuing State: AZ
Law Firm: Musgrove Drutz Kack & Flack, PC
Address: P.o. Box 2720
Prescott, AZ 86302
Telephone Number: (928)445-5935


**ATTACHED DOCUMENTS LIST:**
Summons - Defendant #1
Summons - Defendant #2
Summons - Defendant #3
Summons - Defendant #4
Summons - Defendant #5
Summons - Defendant #6
Summons - Defendant #7
Summons - Defendant #8
Summons - Defendant #9
Certificate of Compulsory Arbitration
Complaint

If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.

AZturboCourt.gov Form Set 84706104