**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alan J. Malnar,<br><br>           Plaintiff,<br><br>v.<br><br>Embry-Riddle Aeronautical University Incorporated, et al.,<br><br>           Defendants. | No. CV-20-08187-PCT-DLR<br><br>**ORDER** |

Pending before the Court are the parties' cross-motions for summary judgment, which are fully briefed. (Docs. 93, 95, 101, 102, 106, 110, 111.) For the following reasons, the Court grants Defendant's motion in part and denies Plaintiff's motion.

**I. Background**

Plaintiff Alan Malnar accepted an adjunct faculty contract at Defendant Embry-Riddle Aeronautical University ("ERAU") in 1998 and was promoted to the rank of Professor in 2018. (Doc. 93-1 at 4, 22.) Soon thereafter, Plaintiff and ERAU entered into another full-time teaching contract for the 2018-2019 academic year. (Doc. 93-1 at 79.) That contract provides "[t]his contract is subject to existing University policies as specified in the [ERAU Faculty Handbook]."

In November 2018, Plaintiff, Defendant Dean Kathleen Lustyk (Plaintiff's indirect supervisor), and Defendant College of Arts and Sciences/Communications Department Chair Matthew Haslam (Plaintiff's direct supervisor) met, in part to discuss the

obligations under his teaching contract to perform community service. (Doc. 101-3 at 13-14.) Dean Lustyk, who had heard other faculty label Plaintiff as a "curmudgeon," rejected his request in the meeting for assignment to a hiring committee for the reason that he would not be a "good ambassador." (Doc. 106-3 at 42.) Because the hiring committee was no longer an option to satisfy Plaintiff's community service obligation, Haslam presented Plaintiff with the option to teach a class without receiving compensation until he found a suitable community service placement. (*Id.*) It is disputed whether Haslam had conversations with others about wanting "younger perspectives" on the hiring committees and referred to Plaintiff as a "dinosaur." (Docs. 106-2 at 33; 101-3 at 56.) Ultimately, Plaintiff did not have to teach a class without compensation because he secured service on two committees. (Doc. 106-2 at 43-44.)

In March 2019, Haslam emailed Plaintiff his annual performance review, which rated him as "needs improvement" overall but recommended renewing his contract. (Doc. 93-2 at 6, 12.) Consistent with that recommendation, Haslam and Chancellor Frank Ayers drew up a full-time faculty contract for Plaintiff but never presented it to him. (Doc. 93-1 at 39.)

On March 25, 2019, Plaintiff entered Dean Lustyk's office without an appointment. Although he was told that she was unavailable to meet with him, he returned thrice more and again was told that he could not meet with her at that time. (Doc. 95-1 at 57-58, 62-63.) The final time, Dean Lustyk exited her office, told Plaintiff that she could not meet with him then, tried to walk past him but was blocked by him, and instructed her assistant to call campus security. (*Id.* at 54-55.) She then retreated to her office but could not close her door when Plaintiff stuck his arm into the jam. (*Id.*)

By now, ERAU was closing in on a timeline outlined in the ERAU Faculty Handbook: "If the department or University has not delivered a letter of non-renewal to a faculty member by March 1, then the faculty member should expect to receive a contract in April." (Doc. 93-1 at 61.) And on April 23, 2019, Chancellor Ayers presented Plaintiff with a "Faculty Phased Retirement Agreement" ("FPRA") which offered a half-

time teaching load from August 16, 2019 to May 15, 2020 and would not renew. (Docs. 93-1 at 47-48; 102-1 at 56.) In that same meeting, Chancellor Ayers also presented Plaintiff with a letter of reprimand stemming from his conduct when attempting to meet with Dean Lustyk. (Doc. 93-1 at 47-48.) The letter warned that "if this type of behavior continues, there will be progressive discipline up to and including separation from [ERAU]." (*Id.* at 45.)

Six days later, Plaintiff sent a letter to Chancellor Ayers and ERAU's Senior Vice President for Academic Affairs and Provost, Lon Moeller in which he rejected the FPRA and instructed "the University [to] direct all . . . communication regarding the ongoing dispute with Lustyk and Haslam" to his legal counsel. (Doc. 95-2 at 20-21.) Upon receipt of the letter, ERAU, Haslam, and Chief Human Resources Officer for ERAU Brandon Young decided not to offer Plaintiff a faculty contract for the 2019-2020 academic year. (*Id.* at 32-33, 37.)

Afterward, the parties agree that ERAU hired Dr. Amelia Chesley, who was 36 years old at the time. The parties dispute whether she was more or less qualified than Plaintiff. (Docs. 106 at 6; 111 at 2.)

**II. Standard**

When parties submit cross-motions for summary judgment, the Court must consider each motion on its own merits. *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F. 3d 1132, 1136 (9th Cir. 2001). Summary judgment is appropriate when there is no genuine dispute as to any material fact and, viewing those facts in a light most favorable to the nonmoving party, the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case, and a dispute is genuine if a reasonable jury could find for the nonmoving party based on the competing evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). Summary judgment may also be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The burden then shifts to the non-movant to establish the existence of a genuine and material factual dispute. *Id.* at 324. The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts[,]" and instead "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal quotation and citation omitted). Even where there are some factual issues raised, summary judgment is appropriate if the totality of the undisputed facts is such that reasonable minds could not differ on the resolution of the factual question. *Chesney v. United States*, 632 F. Supp. 867, 869 (D. Ariz. 1985).

**III. Analysis**

  **A. Claim One**

Claim one is a promissory estoppel claim. Promissory estoppel has four elements: "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [the] reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." *Bright LLC v. Best W. Int'l Inc.*, No. CV-17-00463-PHX-ROS, 2018 WL 4042122, at *4 (D. Ariz. July 27, 2018) (cleaned up).

Plaintiff argues that Defendants promised him a full-time teaching contract for the upcoming academic year in a provision of the ERAU Faculty Handbook incorporated by reference into his then-operative faculty contract:

> If the department or University has not delivered a letter of non-renewal to a faculty member by March 1, then the faculty member should expect to receive **a contract** in April.

(Doc. 93-1 at 61 (emphasis added); Doc. 93 at 11.) The parties make much hay about

whether the ERAU Faculty Handbook on its own is a contract.  But it is undisputed that Plaintiff's then-operative faculty contract was a contract, and that the faculty contract incorporated the entire ERAU Faculty Handbook by reference.  At least via the faculty contract, the ERAU Faculty Handbook is a contract as to Plaintiff, and a promissory estoppel claim fails on contact with a contract.  *Johnson Intern., Inc. v. City of Phoenix*, 967 P.2d 607, 615 (Ariz. Ct. App. 1998) ("Promissory estoppel is not a theory of contract liability, but instead a replacement for a contract when parties are unable to reach a mutual agreement.").

Plaintiff tries to skirt this conclusion by arguing that even though the ERAU Faculty Handbook is a contract, the specific provision he complains about was not an enforceable contractual provision, thus rendering a promissory estoppel claim actionable.  But even if the Court accepted Plaintiff's argument that the ERAU Faculty Handbook is itself a contract, but the relevant provision within it is not, his promissory estoppel claim still fails because Defendants satisfied any promise by sending Plaintiff "a contract" in April.  The ERAU Faculty Handbook recognizes five types of faculty contracts (notably, none of them indicate whether the type of contract is full-time or part-time).  (Doc. 93-1 at 60.)  One of those types is the "Term Contract," which is "a contract written for a specific period of time or the duration of a specific project, with no expectation of renewal."  (Doc. 93-1 at 60.)  The phased retirement contract was written for the period August 16, 2019 to May 15, 2020 and would not renew.  (Doc. 102-1 at 56.)  Thus, the phased retirement contract is "a contract" under the ERAU Faculty Handbook, and Defendants lived up to the promise Plaintiff argues they made.

Plaintiff next argues that, given his history of receiving full-time teaching contracts, he reasonably expected another full-time teaching contract.  The prior course of dealing may clarify ambiguous terms, but it does not allow Plaintiff to vault the unambiguous plain text of the provision, indicating that he would receive "a contract," later defined in the ERAU Faculty Handbook without reference to full- or part-time.  It simply was not reasonable for Plaintiff to expect a full-time annual teaching contract

when nothing in the language of the ERAU Faculty Handbook promised him that. Defendants are entitled to summary judgment on this claim.[1] *Albino v. Baca*, 747 F.3d 1162, 1176 (9th Cir. 2014) ("We have long recognized that, where the party moving for summary judgment has had a full and fair opportunity to prove its case, but has not succeeded in doing so, a court may enter summary judgment sua sponte for the nonmoving party.").

### B. Count Two

Defendants move for summary judgment on Count Two, which alleges that Defendants breached the covenant of good faith and fair dealing when they terminated Plaintiff on the basis of his age in violation of the ERAU Faculty Handbook. Under Arizona law, the implied covenant of good faith and fair dealing "arises by virtue of a contractual relationship. The essence of that duty is that neither party will act to impair the right of the other to receive the benefits which flow from their agreement or contractual relationship." *Rawlings v. Apodaca*, 726 P.2d 565, 569 (Ariz. 1986).

Defendants argue ERAU Faculty Handbook is not a contract and thus cannot sustain a bad faith claim, and that absent a written contract, the Arizona Employment Protection Act ("AEPA") bars any wrongful employment action.[2] As noted above, Plaintiff's faculty contract incorporated the ERAU Faculty Handbook by reference, and by that incorporation, the corpus of the ERAU Faculty Handbook became contract as to him and Defendants. And, as explained below, questions of fact remain as to whether ERAU terminated Plaintiff on the basis of his age. Defendants therefore are not entitled to summary judgment on this claim.

### C. Counts Three and Five

---

[1] Defendants, though they did not seek summary judgment on this claim in their briefing, did ask the Court for summary judgment on this claim at oral argument.

[2] Defendants overstate their AEPA argument. Even without a written contract, a wrongful employment action may proceed, so long as it is ground in (1) claims that the employer terminated the employee in violation of an Arizona statute or (2) claims that the employer terminated the employee because of the employees' refusal to violate an Arizona statute or the Arizona Constitution or for providing information that the employer is violating an Arizona statute or the Arizona Constitution." *Thorp v. Home Health Agency—Ariz., Inc.*, 941 F. Supp. 2d 1138, 1143 (D. Ariz. 2013) (citing A.R.S. § 23-1501(3)(a)-(c)).

Count three asserts a negligence claim and count five advances a negligent infliction of emotional distress claim, both of which relate to Defendants' workplace conduct while Plaintiff was still employed. As Defendants argue, such allegations of injury from allegedly negligent conduct by an employer are "addressed exclusively under Arizona's workers' compensation scheme." *Gamez v. Brush Wellman*, 34 P.3d 375, 378 (Ariz. Ct. App. 2001). And the Industrial Commission of Arizona enjoys exclusive jurisdiction over claims governed by workers' compensation. *Rios v. Indus. Comm'n*, 586 P.2d 219, 376 (Ariz. Ct. App. 1978). Plaintiff does not address this jurisdictional argument, and the Court agrees with Defendants. These claims are not properly before the Court. Defendants are entitled to summary judgment on both claims.

**D. Count Six**

Claim six alleges "wrongful discharge in violation of public policy established by common law." (Doc. 1-3 at 24.) But the AEPA limits wrongful employment actions to three categories, none of which include violation of public policy established by common law. *Thorpe*, 941 F. Supp. 2d at 1143. Plaintiff's argument that a court may treat a written contract—one of the three permissible grounds for a wrongful employment action under the AEPA—as if it were common law is beside the point. The AEPA does not permit wrongful discharge claims grounded in common law. Defendants are entitled to summary judgment on this claim.

**E. Count Seven**

Count seven alleges violations of the Age Discrimination in Employment Act ("ADEA") and the Arizona Civil Rights Act ("ACRA"), which prohibit employers from discharging an employee because of the employee's age.[3] 29 U.S.C. § 623(a)(1); A.R.S. § 41-1463(B)(1).

As a threshold matter, Dean Lustyk argues that she cannot be individually liable under the ADEA or the ACRA. (Doc. 95 at 13.) This is true. *Miller v. Maxwell's Int'l*

---

[3] Plaintiff also alleged a Title VII claim under count seven but it was later dismissed as to all defendants. (Doc. 94.) That same order also dismissed count seven with respect to the Haslam defendants and dismissed count four in its entirety. (*Id.*)

*Inc.*, 991 F.2d 583, 587-88 (9th Cir. 1993); *Higgins v. Assmann Elecs., Inc.*, 173 P.3d 453, 457 (Ariz. Ct. App. 2007).[4] Dean Lustyk is entitled to judgment on count seven.

Now, as to ERAU. Absent direct evidence of discrimination, Plaintiff must prove discrimination through the *McDonnell Douglas* burden shifting framework. *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008); *see also Higdon v. Evergreen Int'l Airlines, Inc.*, 673 P.2d 907, 910 n.3 (Ariz. 1983) (following Title VII caselaw when analyzing ACRA).

To make his prima facie case, Plaintiff must prove that he was (1) at least forty years old; (2) subjected to an adverse employment action; (3) otherwise qualified for the position; and (4) a substantially younger employee with equal or inferior qualifications was free from such adverse action. *See Douglas v. Anderson*, 656 F.2d 528, 532-33 (9th Cir. 1981). If Plaintiff establishes a prima facie case, the burden shifts to Defendants to produce a legitimate, nondiscriminatory reason for the employment decision or adverse action. *See Diaz*, 521 F.3d at 1207. If Defendants carry their burden, Plaintiff must demonstrate a triable issue of fact as to whether Defendants' "purported reason is pretext for age discrimination." *Shelley v. Geren*, 666 F.3d 599, 608 (9th Cir. 2012).

Material disputes of fact exist as to Plaintiff's age-discrimination claim. As to the prima facie case, Plaintiff alleges and provides evidence proving that he is over 40, was discharged, was qualified for the position, and was replaced by a younger (36 years old) hire. On their burden, Defendants allege that Plaintiff was discharged for acting "unprofessionally," citing "angry outbursts" and "fail[ing] to perform his job as an ERAU employee." (Doc. 95 at 15.) Plaintiff then impugns their motives for discharging him, arguing that a meeting between him and Dean Lustyk—which Defendants cite to buttress their assertions of unprofessional conduct by Plaintiff—in fact went just fine, supporting his claim with testimony by Dean Lustyk and her assistant who was present when the meeting occurred. (Doc. 101 at 9.) These are factual disputes appropriate for a

---

[4] Plaintiff argues that, under *Higgins*, liability may attach to individual employees under the AEPA. (Doc. 101 at 16-17.) And that's true. But Plaintiff did not allege any violation under the AEPA, so that truth is of no avail.

- 8 -

jury. ERAU is not entitled to summary judgment.

### E. Count Eight

Count eight alleges injunctive relief, which is not "an independent cause of action" but instead "a remedy for an underlying cause of action." *Diaz-Amador v. Wells Fargo Home Mortgages*, 856 F. Supp. 2d 1074, 1083 (D. Ariz. 2012). Although Plaintiff mislabeled a prayer for relief under the heading of a claim, Defendants' objection to count eight is formalistic and insubstantial. Defendants offered no argument in briefing or at oral argument that injunctive relief would be inappropriate for any of substantive claims alleged, save for its quibbles about how the request for injunctive relief was labeled. The Court therefore denies summary judgment on count eight because everyone agrees that count eight is not a substantive claim—it merely is a mislabeled request for relief. In the absence of a meritorious argument that injunctive relief is unavailable as a matter of law, there is nothing to enter judgment upon. Accordingly,

**IT IS ORDERED** that Plaintiff's motion for summary judgment (Doc. 93) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' motion for summary judgment (Doc. 95) is **GRANTED IN PART** as follows:

- All defendants are entitled to summary judgment on counts one, three, five, and six.
- Defendant Lustyk is entitled to summary judgment on count seven.

**IT IS FURTHER ORDERED** that the parties shall appear for a telephonic trial scheduling conference on August 23, 2022, at 10:00 a.m. Call-in instructions will be provided via separate email.

Dated this 31st day of August, 2022.

Douglas L. Rayes
United States District Judge